IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| BOBBIE ANN HUDSON, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 2:09-CV-00167-RWS |
| BEAZER HOMES, INC., and THE : | |
| PRUDENTIAL INSURANCE : | |
| COMPANY, : | |
| : | |
| Defendants. : | |

## **ORDER**

This case is before the Court for consideration of Defendants' Motion for Summary Judgment [12]. After reviewing the record, the Court enters the following Order.

### **Background**

A hip replacement surgery injured Plaintiff Bobbie Ann Hudson ("Plaintiff" or "Hudson") while she was employed by Defendant Beazer Homes, Inc. ("Defendant" or "Beazer"). (Dkt. No. [1-1] at ¶ 4). Defendant Prudential Insurance Company ("Defendant" or "Prudential") paid her disability benefits under Beazer's insurance policy because she was unable to work at any job due to her injury. (Id. at ¶¶ 5, 7). In January 2009, Prudential

stopped these payments and would not reinstate them, despite Plaintiff's assertion that her physician thought she was unfit to work. (Id. at ¶¶ 8–10; Dkt. No. [12-2] at ¶ 8). Although certain work restrictions were necessary, Prudential believes "the evidence revealed that Plaintiff was capable of working in a sedentary occupation and that she had the skills necessary to perform alternative sedentary occupations." (Dkt. No. [12-2] at ¶ 10). This provided a basis for termination of the benefits because "in order to receive additional benefits [after 24 months of payments,] she must be disabled from any alternate occupation for which she is qualified." (Id. at ¶ 9). Evidence that led Prudential to reach this conclusion includes the opinions of physicians who evaluated Plaintiff and video of Plaintiff driving, carrying groceries, and unloading groceries from her truck. (Id. at ¶¶ 60–73).

On June 9, 2009, Plaintiff filed a complaint in the Superior Court of Forsyth County seeking damages and reinstatement of her disability benefits. (Id., prayer for relief (a)–(f), at 1, 6). Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (Dkt. No. [1] at 1). On November 10, 2010, Defendants filed a Motion for Summary Judgment [12] on all claims.

2

(Dkt. No. [12] at 1). Plaintiff, represented by counsel, did not file a response to Defendants' Motion for Summary Judgment [12].

## Discussion

### I.     Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met his burden, the nonmoving party must go "beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted). If the non-moving party fails to do so, the moving party is entitled to summary judgment. United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991). However, an unopposed motion does not mean that the

moving party automatically prevails; rather, the Court is still required to consider the merits of the motion. See Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629, 632 (11th Cir. 1988) (denying an argument on appeal because the lower court "indicate[d] that the merits of the motion were addressed"); Simpson v. Countrywide Home Loans, No. 1:10-CV-0224-CAM-ECS, 2010 WL 3190693, at *3 (N.D. Ga. Apr. 26, 2010) (holding that "unopposed" under Northern District of Georgia Local Rule 7.1(B) does not mean the non-responsive party "abandoned" its claims in the motion to dismiss context).

**II.    Standard of Review for ERISA**

    A.    ERISA Applicability and Preemption

ERISA applies "to any employee benefit plan if it is established or maintained … by any employer engaged in commerce … ." 29 U.S.C. § 1003(a)(1). ERISA defines "employee benefit plan" as either an "employee pension benefit plan" or an "employee welfare benefit plan." 29 U.S.C. § 1002(3). ERISA further defines "employee welfare benefit plan" as "any plan, fund, or program … established or maintained by an employer … for the purpose of providing its participants or their beneficiaries, through the purchase

4

of insurance or otherwise, … benefits in the event of … disability … ." 29 U.S.C. § 1002(1). A "plan, fund or program" exists for purpose of ERISA liability "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982).

Furthermore, ERISA provides a uniform regulatory regime over employee benefit plans and includes expansive preemption provisions which are intended to ensure that employee benefit plan regulation remains "exclusively a federal concern." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004). This goal is facilitated through 29 U.S.C. § 1144(a), which provides that ERISA preempts all state laws that "relate to any employee benefit plan described in [§ 1003]." The Supreme Court noted this preemption provision is "conspicuous for its breadth" and has interpreted the term "relate to" broadly:

> A law relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan. Under this broad common-sense meaning, a state law may relate to a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect. Pre-emption is also not precluded simply because a state law is consistent with ERISA's substantive scheme.

Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138–39 (1990) (citations omitted) (quotation marks omitted). Thus, state law claims—whether based on state common or statutory law—that "relate to" an ERISA plan are preempted under § 1144 and fail as a matter of law. See e.g., Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47–48 (1987); Jones v. LMR Int'l, Inc., 457 F.3d 1174, 1179 (11th Cir. 2006).

### B. Standard for Denial of Benefits

"ERISA does not set out standards under which district courts must review an administrator's decision to deny benefits." Doyle v. Liberty Life Assurance Co. of Boston, 542 F.3d 1352, 1355 (11th Cir. 2008) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989)). The "typical summary judgment analysis does not apply to ERISA cases." Ruple v. Hartford Life and Accident Ins. Co., 340 F. App'x 604, 611 (11th Cir. 2009). Rather, the Eleventh Circuit in Williams v. BellSouth Telecomms., Inc. established a six-step framework "for use in judicially reviewing virtually *all* ERISA-plan benefit denials":

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.,* the court

disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

373 F.3d 1132, 1137–38 (11th Cir. 2004) (emphasis in original) (footnotes and citations omitted).[1]

## III. Merits of Defendants' Motion

Defendants argue that the case should be dismissed because: (A)

---

[1] The Supreme Court's decision in Metro. Life Ins. Co. v. Glenn, however, cast doubt on the sixth step of this procedure. See 554 U.S. 105, 115–17 (2008) (concluding that conflict of interest should be weighed as one factor in determining whether an administrator abused discretion). Following Glenn, the Eleventh Circuit "recognized that Glenn implicitly overrules Brown and other cases requiring courts to apply the heightened standard to a conflicted administrator's benefits decision." Capone v. Aetna Life Ins. Co., 592 F.3d 1189, 1195 (11th Cir. 2010) (citation omitted). Accordingly, under the sixth step, "the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious," and the burden is on the plaintiff to show a decision was arbitrary. Id. at 1196.

7

Plaintiff's claims "'relate to' an ERISA plan and are thus preempted" and (B) the denial of benefits is permissible under the modified Williams six-part test. (Dkt. No. [12-1] at 13, 17–25).

### A. ERISA Preemption

Plaintiff asserts the following state law claims: (1) reinstatement of her disability benefits; (2) compensatory damages; and (3) bad faith damages. (Dkt. No. [1-1] at 6). However, all of these claims "relate to" an ERISA plan and are thus preempted. The intended benefits are long-term disability payments for the plan's participants who are unable to work due to injury or sickness. (Dkt. No. [12-9] at 27, 32). The plan is funded by Beazer's payment of premiums to Prudential, which funds benefit payments. (Id. at 35). Finally, the Plan clearly describes the procedures for receipt of benefits. (Id. at 50, 56–58). Accordingly, the Plan qualifies as an "employee welfare benefit plan" and is governed by ERISA. Also, there can be no dispute that Plaintiff's state law claims "relate to" the Plan; indeed, the entire Complaint [1-1] is premised on Prudential's denial of disability benefits. (Dkt. No. [1-1] at ¶¶ 8–14.) Those state law claims are therefore preempted and dismissed with prejudice.

8

B.     Modified Williams Six-Part Test

With the dismissal of her state law claims, Plaintiff may only proceed with a claim for benefits under 29 U.S.C. § 1132(a)(1)(B).  Under Capone, the Court begins by determining if Prudential's decision was correct from a de novo perspective. When performing this review, the Court is limited to the evidence that was before Prudential at the time the decision was made to deny benefits. Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241, 1246 (11th Cir. 2008) (noting that a court performing a de novo review is "limited to the record that was before [the administrator] when it made its decision"). The Court will limit its consideration at this step to the administrative record, and no outside evidence will be considered. Id.

There is no dispute Plaintiff underwent hip surgery and a subsequent revision procedure, resulting in certain restrictions/limitations. However, the evidence reveals there were no complications following the revision, and Plaintiff's recovery appears to have gone as planned so that Plaintiff is able to work in a sedentary capacity. (Dkt. No. [1-1] at ¶¶ 14, 18 60–73). Because the evidence reveals that Plaintiff's recovery from hip revision surgery was uneventful, and because her treating physicians have identified no

9

restrictions/limitations that would prevent sedentary work, Prudential correctly determined Plaintiff was no longer disabled and retained sedentary work capacity. See Peters v. Hartford Life & Accident Ins. Co., Nos. 08-16070, 09-12867, 2010 WL 638451, at *2 (11th Cir. Feb. 24, 2010) (finding evidence submitted by the plaintiff did not support "a finding of total disability because it did not contain limitations or restrictions on [plaintiff's] ability to perform her job"); Bell v. Shenandoah Life Ins. Co., 589 F. Supp. 2d 1368, 1376 (M.D. Ga. 2008) (holding the defendant's decision to deny benefits reasonable in part because the treating physician did not place any functional limitations on the plaintiff). When considered in this light, Prudential correctly determined Plaintiff retained sedentary work capacity.

Even assuming Prudential's decision was not de novo correct, Prudential's motion should be granted because the plan documents confer discretion, and the facts show that Prudential's decision was reasonable. Under the second step in the analysis, the Court must determine whether the plan grants discretion to Prudential. Where a plan gives the administrator discretion to determine eligibility for benefits, the arbitrary and capricious standard of review applies. E.g., Glazer, 524 F.3d at 1246; Tippitt v. Reliance Standard Life

10

Ins. Co., 457 F.3d 1227, 1232 (11th Cir. 2006); Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1449 (11th Cir. 1997).

In order to determine whether the Plan grants such discretion, the Court is "required to examine all of the plan documents." Shaw v. Conn. Gen. Life Ins. Co., 353 F.3d 1276, 1282 (11th Cir. 2003). The documents need not, however, contain any particular "magic language" in order to confer the requisite discretion. Gutta v. Standard Select Trust Ins. Plans, 530 F.3d 614, 619 (7th Cir. 2008).

Discretion-granting language is contained in both the Summary Plan Description ("SPD") and the formal plan document. According to the SPD: "The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." (Dkt. No. [12-9] at 56). This language clearly grants Prudential the requisite discretion for the arbitrary and capricious standard to apply. See, e.g., Keith v. Prudential Ins. Co. of Am., No. 09-10695, 317 F. App'x 548, at *1 (11th Cir. 2009) (reasoning that "[n]o question exists" that language identical to that in the SPD in this case conferred discretionary authority to determine eligibility or to construe the terms of the

11

plan). The formal plan document also grants discretion to Prudential. The plan states that a participant is disabled when "Prudential determines" that the disability standard has been satisfied. (Dkt. No. [12-9] at 38). This language confers the requisite discretion. See Miller v. Prudential Ins. Co. of Am., 625 F. Supp. 2d 1256, 1264 n.4 (S.D. Fla. 2008) (noting that the insurer had discretion to decide disability claims based on the same "when Prudential determines" language in the plan here). Because both the SPD and the formal plan grant Prudential discretionary authority to decide claims, the arbitrary and capricious standard of review applies.

Under the arbitrary and capricious standard, the administrator's decision is affirmed if, "based upon the facts as known to the administrator at the time the decision was made," there was a "reasonable basis for the decision." Glazer, 524 F.3d at 1246; see also Griffis v. Delta Family-Care Disability, 723 F.2d 822, 825 (11th Cir. 1984) (stating the administrator's decision "need not be the best possible decision, only one with a rational justification"). In applying this standard, the Court's role is to determine whether the decision was "made rationally and in good faith—not whether it was right." Griffis, 723 F.2d at 825.

12

Thus, the third step in the analysis is to determine if reasonable grounds exist for Prudential's decision.

Prudential determined Plaintiff is no longer eligible for long-term disability benefits because she can work in a sedentary capacity after reviewing and considering all of the evidence in the administrative record. This decision is entitled to deference, and there are no facts that would show Prudential's decision was arbitrary, capricious, or tainted by self interest. Paramore, 129 F.3d at 1451 ("[W]here the plan affords the administrator discretion, the administrator's fact-based determinations will not be disturbed if reasonable based on the information known to the administrator at the time the decision was rendered."). Thus, for all of the reasons Prudential's decision was right, that decision also was reasonable.

Finally, when determining whether Prudential's decision was arbitrary or capricious, the Court should weigh any conflict of interest as "a factor." Doyle, 542 F.3d at 1360. However, even where a conflict exists, "the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." Id. Here, there are no facts that showing Prudential's decision was based on anything other than an

unbiased consideration of the facts and Plan language at issue. As the Eleventh Circuit has now made clear, it is not incumbent upon Prudential to prove its decision was not tainted by self interest, but rather it is Plaintiff's burden to show that it was. Id. Accordingly, even if an analysis of steps five and six were required, there are no facts that show an abuse of discretion.

## Conclusion

For the aforementioned reasons, Defendants' Motion for Summary Judgment [12] is **GRANTED**. The clerk shall close the case.

**SO ORDERED**, this  16th  day of June, 2011.


**RICHARD W. STORY**
United States District Judge